And this is Siloam Springs Hotel v. Century Surety Company. Mr. Mullen, we're ready to hear you, please. Case 17-6208. May it please the Court, my name is Tom Mullen, and I boomingly represent Siloam Springs. If it does it again, point at me and I'll back it off. As you probably know, this case has had a tortured history, but only one... We can turn the volume down on our managing blocks here. You're a little too close to the microphone. You haven't waterboarded anybody except the judges, I gather. And in this particular case, through its tortured history... Counsel, if you'll move the microphone away from you a bit. We appreciate a good strong voice. There you go, that's better. He's got me buffaloed that I don't want to touch anywhere near the base. But in this case, despite its history, there's only been one appellate justice who has spoken to the central issue in this case. And the central issue in this case is, is part of the indoor air exclusion ambiguous? Obviously, we answer that. You say that there's been no appellate justice who's spoken to it. Have there been any appellate cases in which it's arisen? Yes. In the Casino West case out of Nevada, there was a case, and I believe that to be persuasive authority that you're probably well familiar with, persuasive authority in a case that has, in my career, never been more on point. In the Casino West case, it was the century exclusion of the indoor air. And the indoor air exclusion by century is an exclusion they have developed, they use in their policies, they only use in their policies. That's why there's, in my opinion, only one other case. But in the Casino West case, that was a hotel case, just like the Silent Springs Hotel. In the Casino West case, that was a case in which the pool heater malfunctioned, the same as in the Silent Springs case. In the Casino West case, the pool heater malfunctioned and it emitted carbon monoxide, which guests breathed in. Same with Silent Springs. And in the Casino West, the guests were injured by breathing in the carbon monoxide, just as they were here. The century in the Casino West case relied not only on the indoor air exclusion, but the exact same part of the exclusion, where it talks about qualities and characteristics of indoor air, just like they have here. And in that case, a federal district judge found that the interpretation by century and the interpretation that quality and characteristics of indoor air would not apply to a sudden and accidental carbon monoxide release, thus it was ambiguous, thus it was held against the century insurance. That was a federal district court. Then when it went to the Ninth Circuit, the Ninth Circuit certified the question to the Nevada Supreme Court, and they unanimously held that the indoor air quality exclusion was ambiguous. So that is the appellate reported history. That's the status of things. In addition to Justice Cogburn. Whether it's ambiguous or not is subject to debate. Whether it is properly grammatically is not subject to much debate. It is a mess of a jumble. You can't even tell, for example, with respect to the word pathogenic contamination, or whatever the term is. At one point it's used as an adjective, and other places it's used as a noun. What is your best argument here as to your position? How should we interpret that and therefore rule in your favor? Our position is when they say qualities or characteristics of indoor air, and the reason I pick that is that's what they relied on when they issued their denial of coverage. The quality of air and carbon monoxide contamination are two different things. A characteristic of air, the air in France is the light in Nice. All those kinds of things are characteristic in a poetic sense, I guess. But that doesn't tell us one way or another whether it was meant to apply to carbon monoxide poisoning that occurred. You might have very good quality of air with the air cleaners and the scrubbers and everything going, and meanwhile there's contamination coming in. How do we know whether the contamination was covered or not? When you have the sudden and accidental release of the carbon monoxide into the air, that is not the quality and characteristic of the air. The quality and characteristic of the air is what is in the air usually, normally. They talk about mold in their exclusion. They're trying to get it in there, which if you had a moldy building would be something that would be a quality and characteristic of the air. The carbon monoxide wouldn't be. Typically mold exclusions are endorsements of the policy, right? Not only is it typically, but we know that to be a fact in this case because unusually, since it was a century exclusion, we took the deposition of Ernie Taylor, who was one of the gentlemen who was part of developing this particular exclusion, and when it started off it was called a mold exclusion. And while Mr. Taylor did a fine job as an executive of his company, he did candidly say to us, and it's cited to in the record in our brief, never did they discuss carbon monoxide to his memory or in writing while they were developing this particular exclusion. My problem is that you seem to want to ignore what I think are some pretty important words in the policy, which is the word any is used twice, alleging to be contributed to in any way by any, any toxic, hazardous, noxious, irritating, pathogenic, or allergen qualities or characteristics of indoor air. Regardless, and also this word, these three words, regardless of cause. Twice they say any. They also say regardless of cause. Those are all encompassing words, and what you seem to want to do is put a temporal limit in there that's not there, which is, well, it may be a characteristic, but it's a very temporary one because it's sudden. And I don't see that, not only do I not see a temporal limitation, I don't, I think those words that they use, the words any, any way by any toxic characteristic, regardless of cause, seems defined by purpose to rule out arguments like this. Well, my position, consistent with another federal district judges and the Nevada Supreme Court. I understand that, but I'm saying, I'm not sure, I don't think that court focused on these all-encompassing words that were used here. I think they did because they said that Century's position was not unreasonable. They acknowledged that Century's position was reasonable. That's what that court thought. I'm asking you to address these words. I'm asking you to answer my question about the temporal limitation that you're placing that's not there. I think those words are what make Century's position reasonable, but the reason I think our focus on qualities and characteristics of error is just that. If it's something that is temporally not there, and that's the facts of this case, that's the facts of the Casino West case, then that's also a reasonable explanation. Even though the CO2 didn't exist the day before, and presumably after the heater was fixed, didn't exist the day after, it only happened for a short period of time. What about it says, what about this clause says anything about the qualities or characteristics and how long they must be maintained, or how long they must be present? I believe qualities and characteristics in their plain, everyday, ordinary meaning and definition, using what I use, what you use, what Webster says it is, talks about that qualities and characteristics limits it down to inherent things that are in the air. And obviously the CO2 in this particular case wasn't there. That's why the position of it being not covered under qualities and characteristics is reasonable, and we've got two reasonable ones, that leads you to the ambiguity. So if it's ambiguous, so what? I win. Where does that get you? Why do you win? Because it's an insurance policy exclusion, and exclusions are interpreted narrowly. That's our Dotson case, our Connor case, our Northwest mutual case. And they're construed against the company who made it, in this case Century, and through the benefit of their insurer, Asylum Springs, who is us. Does the word toxic, and I'll ask your friend on the other side the same question, does the word, do the words toxic, hazardous, noxious, modify the word allergen and pathogen, and what should we make of the fact that pathogen is used as an adjective, pathogenic, and allergen is used as a noun, because it's not allergenic, what do we make out of all of this? Well, I think you hit the nail on the head when you start off, it's a mess. And in the denial of coverage, and in their position in this case, they've only focused on the one portion of the indoor air exclusion, which has the language about qualities and characteristics of indoor air. I'd like to turn you to the jurisdiction question. Good, because I'm starting to sweat with the four minutes. Yes, and your, the appellee makes a good point here that you've appealed only from the denial of your motion to reopen the case. Now, I recognize this case has had kind of a strange procedural history, but you very specifically appealed from that denial, and that denial did not incorporate or reincorporate, even though you requested the court do so, your 2014 grant of summary judgment, which is what we're now talking about. Well, the reason that there's no terminal decision that would create a jurisdictional problem is because when this court handled it last time, despite what's said in Sentry's brief, they did not address in any way, shape or form... There's no question about that. That's not what I'm asking you. I don't think this court addressed the merits. We were very specific. We remanded for a determination of diversity jurisdiction, and then we added this superfluous comment about you might want to think about the Oklahoma Supreme Court decides it, a few months go by, and you then file a motion to reopen, and in that motion, I think you did the right thing. You asked the court to either reaffirm its original 2014 summary judgment decision, so you could appeal that, since we've never decided it, or I think you asked it to reconsider. Well, the court didn't do either one. It just denied the motion, and then it didn't enter any judgment. So the argument, as I see it, is that you appealed from the denial of the refusal to reopen, but you didn't argue that. You argued the 2014 summary judgment and the ambiguity issue. In the order, the judge didn't reopen because she was adopting her previous ruling. And within 30 days of that, we've brought this case back to your doorstep. So I understand that. So I think your argument is that it essentially merged, because the problem you have is there was a final judgment back then, and that was properly appealed. We didn't rule on the merits, but it was properly appealed. So your argument I think now is that somehow that final judgment merged into this denial, what was a clear denial of a motion to reopen. That's the only thing that got decided. It merges for appellate review until there is an appellate review, and since there hasn't been... Well, what authority do you rely on that we could accept that as a merger of that 2014 judgment that wasn't specifically reaffirmed? There was simply a denial of the reopening. The authority that stands for you have a right to appellate review, and there hasn't been any. And we have a string cite in our reply brief that addresses that. Thank you, counsel. You have a minute for rebuttal. Thank you, Your Honor. I'm Phil Richards for Century Surety. The issue that was argued on this appeal, as was argued in the Casino West case, is that this exclusion is ambiguous, not because the language is awkward, because it's not grammatically correct, but because it suggests the possibility that the exclusion could apply to a latent condition such as mold, or the possibility that it could apply to a sudden release of some noxious or hazardous chemical such as carbon monoxide. That was what has been argued in the trial court and what was argued on this appeal. The fact is that that does not create an ambiguity under Oklahoma law because it can be both, and is in fact both under the terms of the exclusion. Let me ask you this question. Let's say that there is a hotel. Yes, sir. And it has a very good HVAC system, five-star hotel, good HVAC system. Air conditioning goes on at the right time, the heat goes on at the proper time, there are air scrubbers, there are state-of-the-art air quality matters. If I suggest maybe I know a little bit about air quality. More than I do. I have a wife with some allergies, a spouse with some allergies. Now, this hotel is operating very efficiently and there's a very swell air, and there's a fire. Yes, sir. And the fire is burning out of control. There are several deaths caused by several means of death. One of them, obviously, is going to be a room that got smoke inhalation and the occupants died. Do you discriminate in terms of coverage as between people who were directly burned versus those who suffocated? How do you interpret your policy for those purposes? Yes, sir, and that was a question that was raised in the Casino West decision, and yes, you can. The law in Oklahoma is that if, in fact, that was the agreement of the parties, that they are free to contract as they wish so long as it does not offend public policy. And there can be a reason to discriminate. It certainly sounds like that offends public policy if you're going to say that 60 percent of the people who died get relief but 30 percent don't because the air quality in the room was affected. But there is no public policy of the state of Oklahoma requiring insurance coverage for a hotel or a motel. It is not like compulsory auto insurance, which does invoke public policies under our law. And there may be a reason to discriminate. For instance, if a person dies from burns, it's obvious that you can see they died from a burn. If a person claims I have had an injury from smoke inhalation, that is not physically obvious. There could be reasons, but the point is it is not the court's position to second guess the wisdom of the party's contract. All right, well, let's not talk about the wisdom of the contract, but just talk about the contract. Because I read this, and I couldn't tell what modified what. I think a pathogen is a noun, correct? Sir, if you're getting into English with me, I am the wrong person to ask. Okay, then maybe we should get somebody who is familiar with grammar to ask my questions. But it just seemed to me that we had some modifiers that seemed to modify the word allergen. It was pretty clear that pathogens and allergens were not supposed to be covered. I take it by that that they meant to somehow provide in here a mold exclusion. Am I correct that this does exclude coverage for mold? I think it likely would, but there is within this exclusion within the policy a separate subsection that deals specifically with mold and bacteria. Well, is carbon monoxide a characteristic of air? I certainly believe, sir, that carbon monoxide would be a hazardous characteristic. I think it would be a hazardous characteristic of indoor air. What do you mean by the word characteristic? I mean something within the air, a component of the air. And I would suggest, Your Honor, that it's important to bear in mind that while we... I distinguish, I guess, between air and toxic air or hazardous air or noxious air. And the quality of air, which can mean something entirely different. Well, I don't know that a layperson, which is the standard that is applied here, and understanding what this means, would draw the line that if there's carbon monoxide in the air, that renders it hazardous, regardless of cause, that that does not constitute a hazardous characteristic or quality. Well, two courts have looked at it, and they've said, well, this is ambiguous. But the Casino West Court, looking at it, said that it was ambiguous, not because the language was unclear, but because it could apply either to a latent or to a sudden condition. Yet the fact is, it can apply to both. That doesn't render it ambiguous. But the court didn't buy that argument, right? I mean, they said it was ambiguous. It did say it was ambiguous. I don't think it was discussed particularly whether the application to both circumstances was presented to it. But there are other problems with the Casino West case that show that it is not consistent with Oklahoma law. First and foremost, that the Casino West, the Nevada Supreme Court, in deciding Casino West, said that the policy was ambiguous, if it creates multiple reasonable expectations of coverage. So did you all discuss below certifying this question to the Oklahoma Supreme Court? No, Your Honor, we did not. In terms of originally, before Judge Miles-LaGrange made her decision? No, because this case presents a question of well-established Oklahoma law, not specifically as to this manuscript endorsement. But as the BP America case made clear, the standards for interpreting insurance contracts under Oklahoma are well-established. The rules from the Dodson case forward have been very clear on how that is to be determined. And while this case may present a unique application... What is it about those cases that give us guidance in interpreting these words? Well, the guidance is that the words according to Dodson, according to May, according to BP America, are interpreted in their plain and ordinary context. Well, in plain ordinary context, a characteristic of air or a quality of air does not generally refer to carbon monoxide poisoning from a sudden release. Well, Your Honor, I think that's because... It cannot be a characteristic of the air at the point that it's released into it. I'm not sure I'm understanding. I guess your argument is that you think that if it's ambiguous, it's ambiguous because it can cover both a short-term incident like this, like the carbon monoxide release, and then it can also cover a long-term situation. No, Your Honor, I didn't mean to say... I'm saying it is not ambiguous because it can apply to both, that it can apply to two circumstances. But I think the argument they're making is it's ambiguous because it may be interpreted to not apply at all to a temporary, sudden situation. And that's because of the words, qualities, and characteristics, which are hard to figure out how they're used here. But I think there's a way to look at this to say it's ambiguous because those words, qualities, or characteristics exclude this sudden event. And so if that's the case, if you can look at it to be ambiguous because it's not clear whether it excludes this circumstance, then that kind of blows your argument that there's two reasonable ways to interpret the coverage, right? That is not a distinction I've created. That was a distinction that Casino West created, the Nevada Supreme Court. And the Nevada Supreme Court found that both of those interpretations were reasonable, both that it was latent and that it was sudden. And that makes the point that the fact that it could be either does not render it ambiguous, and certainly Judge Miles LaGrange didn't have any difficulty in understanding the application, could be to a certain extent. Justice Cogger wrote the dissent and largely used the same rationale that Casino West had. And yet, again, we go back to the fundamental problem that the Casino West decision was based upon the law of Nevada that said that policy can be ambiguous if it creates multiple reasonable expectations of coverage in the insured, whereas the Dodson case makes clear that an unambiguous policy provision is applied, it's interpreted notwithstanding the reasonable expectations of the average policyholder. So we do exactly the opposite in Oklahoma. Well, I understand that, but it seems to me that that just begs the question of whether this language is ambiguous. That case merely holds that if there is unambiguous language, that trumps everything and you win. But if the language is ambiguous, then you don't necessarily win. And so the question here is, is this language ambiguous or unambiguous? I don't see how Dodson informs us in any way on that point. Well, let me make two answers, if I may. That it can lead to two reasonable conclusions does not render it ambiguous. For instance, the policy or this exclusion could apply to bodily injury or it could apply to property damage. The fact that it can apply to both does not render it ambiguous. Secondly, neither Dodson nor other Oklahoma cases give guidance on what constitutes an ambiguity within the language, other than when it's read by a person of ordinary intelligence, giving the plain meaning to the words, that it leads to two inconsistent conclusions. And what we have here is a circumstance where the two conclusions that have been argued aren't inconsistent. So if we have two people of ordinary intelligence and got an ordinary background, and one says it means this and the other says it means that, you're saying that's not ambiguous because it could be both. Certainly. But here you have a reasonable court, Nevada. I don't know if they're as reasonable as Colorado or Oklahoma, but they're sort of reasonable people over there, or at least on those rare occasions where I've been in Nevada. They seem friendly. And they say this is ambiguous. Yes, sir. And you're telling us, well, don't read it as ambiguous because only ordinary people, you should give it the ordinary people interpretation. But it seems to me that that guy over there seems pretty ordinary and reasonable, too, not to me that as an offense. I think Mr. Mullen is a very capable lawyer. I mean, your Honor, likewise, the Nevada Supreme Court held, it addressed not only this indoor air exclusion, but also the pollution exclusion. And in doing so, it was an absolute pollution exclusion as opposed to the total pollution exclusion that was present in the bituminous versus Cohen construction case. But the operative language was identical in both cases. The Nevada Supreme Court concluded that that exclusion was ambiguous and would only apply to environmental pollution. Whereas the Oklahoma Supreme Court, looking at the same language, said there's nothing in this language which would limit its application to environmental pollution, therefore it applies to all pollution. And I think that likewise illustrates that Oklahoma would reach a different decision looking at the language of the policy, not looking at what an insured, even a reasonable insured, might expect in terms of trying to figure out what that interpretation would be. The language of this exclusion applies to this case. I don't think that anybody could reasonably argue that carbon monoxide is not a hazardous condition or quality or characteristic. Well, somebody might argue that if an insurance company wishes to exclude carbon monoxide poisoning, they could very simply say this policy does not include death or injury caused by carbon monoxide. They could do that, right? That is argued in every coverage case I have, and I've got about 20 in my office right now where they're saying you could have said something different. That's always the argument that the policyholder goes to. I'm not saying they could have, I'm just saying they could, if they wish to do that, they could do that, right? But then do we instead, they say this does not cover coverage arising from toxic, hazardous, noxious, irritating, pathogenic, or allergen qualities or characteristics of indoor air, regardless of cause. And I'm supposed to know as a kind of a lay person that that means mold, and carbon monoxide. Well, I think so, and frankly, we can't list everything. We're not required to list everything. We're required to inform the insured in some reasonable language what it is that we're excluding and what we're covering. But to list every potential characteristic, hazardous characteristic, every chemical, every allergen, every pathogen that might affect indoor air would be literally impossible and would make the policy impossible to understand. The problem is using the term quality of air to make that universal coverage. At least that's what the argument is before us today. It is, although I think characteristic of air, I mean, I could say that the air quality when I walked to the courthouse this morning was good, it wasn't smoggy. I would characterize the air as cool. That wouldn't confuse an ordinary person is what I meant. It wouldn't suggest that there was some long-term application. I'm saying the air is always cool here in the morning. As a matter of fact, some mornings it's cold. Thank you, counsel. Counsel, you have a minute remaining. When you concede that Century's position, as they do, is reasonable and that our position on qualities and characteristics is reasonable, but they reach different results, that by definition is an ambiguity. We talked about certification and you're right. Neither Phil Richard or I thought about certification until we were in front of Judge Murphy last time. But there has been a motion made here, obviously the court has the right to do it. Oklahoma Supreme Court has the right to accept it or reject it. The reason I don't know that it's necessarily important and I certainly don't recommend it is because you have Justice Cogger's consent which outlines what the Oklahoma law is on ambiguity. Thank you, counsel. I think that is our third case this morning, so we will take our customary break for ten minutes.